IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| STEPHEN WOLFF, individually and as Personal Representative of the Estate of JUDITH WOLFF, deceased; | Case No. 1:14-cv-01466-CL |
| Plaintiff; | **ORDER** |
| v. | |
| PADJA, INC, an Oregon corporation; OREGON SHAKESPEARE FESTIVAL ASSOCIATION, an Oregon nonprofit corporation; MICHAEL DONOVAN, DAVID TAUB, DOUGLAS VOLK, and PARTICIA VOLK, individuals; | |
| Defendants. | |

CLARKE, Magistrate Judge.

Plaintiff decedent, Judith Wolff, fell while attempting to pass through a doorway in the Chateaulin Restaurant and Wine Shop ("Chateaulin"). She sustained injuries that allegedly contributed to her eventual death. Mrs. Wolff's widower, Stephen Wolff, brings this premises liability and wrongful death action against the owners and landlords of the at-issue building; Michael Donovan and David Taub (collectively, the "Landlord Defendants"); and the former

owners of Chateaulin; Padja Inc., Douglas Volk, and Patricia Volk (collectively, the "Chateaulin Defendants").[1] Currently before the Court are Defendants' motions for summary judgment. For the reasons stated below, both motions (#25, #27) are GRANTED.

## PRELIMINARY EVIDENTIARY MATTERS

Plaintiff moves to strike Mrs. Wolff's purported statement, "[a] step is not a problem. I can handle a step[,]" as inadmissible hearsay. The statement does not qualify as hearsay because it is not offered for the truth of the matter asserted. FED. R. EVI. 801(c). Defendants do not submit the statement to prove that there was a step or to establish that Mrs. Wolff could handle a step. Rather, they offer the statement as evidence that Mrs. Wolff knew of the step's existence. Additionally, because this action is brought on Mrs. Wolff's behalf by her estate, the Court finds this statement to be admissible as an admission by a party opponent. FED. R. EVI. 801(d)(2); see Kesey, LLC v. Francis, No. CV. 06-540-AC, 2009 WL 909530, at *18 n.17 (D. Or. Apr. 3, 2009), opinion adopted, No. CIV. 06-540-AC, 2009 WL 1270249 (D. Or. May 5, 2009), aff'd, 433 F.App'x 565 (9th Cir. 2011) (recognizing that other courts have admitted decedents' extrajudicial statements in actions brought by their estates because the decedents were essentially party opponents). For these reasons, Plaintiff's motion is denied. The Court notes that even if the statement was stricken, its absence from the summary judgment record would not be outcome determinative.

The Chateaulin Defendants move to strike all references to the first responders' note that Mrs. Wolff "didn't see" the step. The statement is hearsay. It is an out-of-court statement submitted to prove the truth of the matter asserted. FED. R. EVI. 801(c). Therefore, the Court cannot consider it unless it falls within an exclusion or exception to the rule against hearsay. The

---

[1] Plaintiff has dismissed (#45) its claims against the Oregon Shakespeare Festival. Therefore, OSF's pending summary judgment motion is moot.

most likely basis upon which this statement could be admitted is as a statement made for medical diagnosis or treatment. Federal Rule of Evidence 803(4) exempts statements made for medical care from the rule against hearsay. The "critical inquiry" is whether the statements were made for the purpose of, and are reasonably pertinent to, medical diagnosis or treatment. U.S. v. JDT, 762 F.3d 984, 1003 (9th Cir. 2014); FED. R. EVI. 803(4). Mrs. Wolff's statement that she "didn't see" the step meets this standard. Mrs. Wolff was describing the nature of her fall to a medical professional. Her assertion that she did not see the step is reasonably pertinent to the manner in which she fell, the cause of her fall, and the medical care necessary to address her injuries. The statement is not an inadmissible statement of fault. JDT, 762 F.3d at 1003 (statements of fault are not ordinarily admissible under the medical exception). It does not assign blame to any person or entity. Defendants' motion to strike is, therefore, denied. Again, this statement's presence in the record does not materially affect the Court's ruling on the pending summary judgment motions.

## BACKGROUND

The Landlord Defendants are part owners of the building located on 50 E. Main Street in Ashland, Oregon. Sweitzer Decl. Ex. 4. They leased the first floor of the building to the Chateaulin Defendants. Sweitzer Decl. Ex. 6. The leased property was comprised of two separate spaces. The Chateaulin Defendants operated a wine bar in one and a restaurant in another. Volk Decl. ¶ 4. Each space had its own front door. Volk Decl. ¶4. The Chateaulin Defendants created an interior doorway between the restaurant and wine bar during a 2010 remodeling project. Volk Decl. ¶ 5; Sweitzer Decl. Ex. 13, 1-2. Pursuant to their rental agreement, the Landlord Defendants consented to the door installation on the condition that it was approved by the city. Sweitzer Decl. Ex. 2, at 9; Ex. 5, at 8. The Landlord Defendants were not otherwise involved in

the doorway's construction or design. Sweitzer Decl. Ex 2, at 9-10. The City, an architect, and an engineer approved of the remodel. Sweitzer Decl. Ex. 2, at 7; Ex. 13.

The building is situated on a slight hill. Pl.'s Resp., at 3. Because of the variation in elevation between the wine bar and restaurant, the doorway had a single step down into the restaurant. McLellan Decl. Ex. C, at 9. The step was just over six inches high. McLellan Decl. Ex. A, at 3. The wine bar's flooring was black and white tile. Pl.'s Resp., at 4. The restaurant was darkly carpeted. Pl.'s Resp., at 4. A gold plastic strip identified the flooring transition. Pl.'s Resp., at 4. A red velvet rope hung across the passageway. Volk Decl. ¶ 6. Guests were generally not permitted to remove the rope or use the passageway without assistance. Volk Decl. ¶ 7. The restaurant was more dimly lit than the wine bar. Wolff Decl. ¶ 6; Tran-Caffee Decl. Ex. 3, at 11.

Chateaulin employees received on-the-job training regarding how to handle customers who entered on one side of the property but wanted to patronize the other. Volk Decl. ¶ 8. They were trained to recommend that the guest exit through the front door and re-enter the property through the other door. Volk Decl. ¶ 8a. If the guest asked to use the interior passage, or if the guest was transitioning to one space after spending a period of time in the other, staff would warn the guest of the step, escort the guest to the passageway, remove the rope, offer assistance, and then replace the rope. Volk Decl. ¶ 8b.

On September 16, 2011, Mrs. Wolff entered the wine bar. Sweitzer Decl. Ex. 3. She was using a walker. Wolff Decl. ¶ 2. A Chateaulin employee, Ross Williams ("Williams"), greeted Mrs. Wolff. Sweitzer Decl. Ex. 3. He explained that her dinner reservation was for the restaurant next door. Sweitzer Decl. Ex. 3. He suggested that she exit the wine bar and enter the restaurant's front ramped entrance. Sweitzer Decl. Ex. 3. Mrs. Wolff asked if she could use the interior passageway instead. Sweitzer Decl. Ex. 3. Williams told her that she could, but noted

there was a "big step." Sweitzer Decl. Ex. 3. Williams states that Mrs. Wolff said a step was not

a problem, and moved toward the doorway. Sweitzer Decl. Ex. 3. He describes her demeanor as

"confident, insistent, and dismissive to my suggestion of using the ramp." Sweitzer Decl. Ex. 3.

Williams opened the velvet rope and Mrs. Wolff attempted to move through the doorway.

Sweitzer Decl. Ex. 3. Only the first two legs of Mrs. Wolff's walker made it over the step.

McLellan Decl. Ex. D, at 3. The back two remained tilted on the wine bar's higher floor.

McLellan Decl. Ex. D, at 3. Mrs. Wolff fell forward and hit her head. McLellan Decl. Ex. D, at

3.

There is some dispute regarding whether Mrs. Wolff saw the doorway's step. Williams

testifies that Mrs. Wolff "picked up her walker to attempt to put it down on the second level."

McLellan Decl. Ex. D, at 3. This statement suggests that Mrs. Wolff perceived the step and was

attempting to navigate over it. Conversely, a first responder's report notes that Mrs. Wolff "fell

forward down a step she didn't see[.]" Tran-Caffee Decl. Ex. 1, at 1.

## STANDARD

Summary judgment is appropriate if "the movant shows there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). Summary judgment is not proper if material factual issues exist for trial. Warren v. City of

Carlsbad, 58 F.3d 439, 441 (9th Cir. 1995).

The moving party bears the initial burden of establishing the absence of a genuine issue

of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Devereaux v. Abbey, 263

F.3d 1070, 1076 (9th Cir. 2001). An issue of fact is genuine "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 248 (1986). If the moving party fulfills its burden, the burden shifts to the

non-moving party who must go beyond the pleadings to identify genuine issues of fact. Celotex Corp., 477 U.S. at 324. Conclusory allegations, unsupported by factual material, are insufficient to defeat a motion for summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposing party must, by affidavit or as otherwise provided by FED. R. CIV. P. 56, designate specific facts that show a genuine issue for trial. Devereaux, 263 F.3d at 1076.

The court must view the evidence in the light most favorable to the nonmoving party. Szajer v. City of Los Angeles, 632 F.3d 607, 610 (9th Cir. 2011). All reasonable doubt as to the existence of a genuine dispute of material fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Life Ins. Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981). However, facts must be "viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

Oregon law governs this diversity action. Maricopa County of State of Arizona v. Maberry, 555 F.2d 207, 210 (9th Cir. 1977) ("It is hornbook law that a federal court in a diversity case must follow the substantive law of the state where the incident occurred."). Under Oregon premises liability law, the duty that a proprietor owes to an entrant depends on whether the entrant is an invitee, licensee, or trespasser. Walsh v. C & K Market, Inc., 171 Or.App. 536, 539 (2000). There is no dispute that Mrs. Wolff qualified as a business invitee. See Parker v. Hull Lumber & Plywood Co., 260 Or. 1, 8 (1971) (defining "invitee" as "one who comes upon

the premises at the occupier's invitation, express or implied, upon business which concerns the occupier"). Accordingly, Defendants had a duty to make their property reasonably safe, exercise due care to discover unsafe conditions, and either eliminate or warn of identified risks. Hughes v. Wilson, 345 Or. 491, 497 (2008) ("The common law imposes a general, nondiscretionary duty on landowners to make their property reasonably safe for their invitees."); Woolston v. Wells, 297 Or. 548, 557–58 (1984) (the possessor of land must exercise care "to discover conditions of the premises that create an unreasonable risk of harm to the invitee" and either eliminate the condition creating the risk or warn invitees of the risk so they can avoid the harm).

I.    **Chateaulin Defendants' Motion for Summary Judgment (#27)**

The Chateaulin Defendants move for summary judgment on two bases. First, they contend that they cannot be held liable for the step because it did not present an unreasonable risk of harm. Oregon premises liability law only imposes a duty of care for those conditions that pose an unreasonable risk to entrants. Hagler v. Coastal Farm Holdings, Inc., 244 Or.App. 675, 681 (2011) aff'd, 354 Or. 132 (2013) (a defendant property owner is entitled to summary judgment if a reasonable trier of fact could not find the complained-of condition created an unreasonable risk of harm). Without more, a step does not qualify. Glorioso v. Ness, 191 Or.App. 637, 644-45 (2004). A step must exhibit additional characteristics, like slipperiness or bad lighting, in order to trigger the standard of care. Id. Plaintiff argues that multiple collateral conditions; including dim lighting, deceptive flooring, and a distracting environment; rendered the at-issue step unreasonably dangerous. Defendant disagrees. A jury must sort through this factual dispute. Summary judgment is not appropriate on this basis.

Second, even assuming the step was unreasonably risky, the Chateaulin Defendants argue that no reasonable trier of fact could conclude that they failed to exercise due care in relation to

it. In order to avoid liability, a possessor of property must either eliminate or warn of any unreasonable hazards on its premises. Woolston, 297 Or. at 558. The Chateaulin Defendants contend that they satisfied this duty by warning invitees, including Mrs. Wolff, of the step with visual cues and oral statements. They deterred patrons from using the passageway by hanging a velvet rope across it. There was an obvious change in flooring between the two spaces. The Chateaulin Defendants installed a flooring strip to highlight the step. They trained employees to discourage use of the passageway and to explicitly warn patrons of the step. Williams testified that he followed that training, and suggested that Mrs. Wolff use a different entrance because the interior passageway had a "big step." Sweitzer Decl. Ex. 3.

Plaintiff asserts that there is a genuine issue of material fact regarding whether Williams verbally warned Mrs. Wolff. First, Plaintiff claims that Williams' testimony is contradicted by the first responders' note that Mrs. Wolff did not see the step. Viewed in the light most favorable to the non-movant, the Court finds the first responders' note raises a genuine issue regarding whether Mrs. Wolff perceived the step, but does not conflict with Williams' statement that he warned her of its presence. A person may receive notice of a condition and nevertheless fail to see it. Next, Plaintiff suggests that Williams' testimony has changed over time. The Court disagrees. Though Williams' deposition testimony was more extensive than the statement he drafted at the time of the incident, his story remained the same. Third, Plaintiff questions the veracity of Williams' testimony, and alleges that he might be biased given his role as "the one person who could have prevented the fall[.]" Pl.'s Resp., at 16. Because the Court cannot make credibility determinations at this stage of litigation, Plaintiff asserts summary judgment is not appropriate. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). However, summary judgment is only improper where credibility "is at issue." S.E.C. v.

Koracorp Indus., Inc., 575 F.2d 692, 699 (9th Cir. 1978). Plaintiff's bare assertion of bias is insufficient to create a triable issue of fact. T.W. Elec. Serv., Inc., 809 F.2d at 630 ("[T]he nonmoving party may not merely state that it will discredit the moving party's evidence at trial and proceed in the hope that something can be developed at trial in the way of evidence to support its claim."). Plaintiff mounts no direct evidence to contradict Williams' testimony or to otherwise impeach his credibility. In the absence of probative evidence of bias, Plaintiff has failed to raise a genuine issue of material fact. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Argonaut Ins. Co., 701 F.2d 95, 97 (9th Cir. 1983) ("[N]either a desire to cross-examine an affiant nor an unspecified hope of undermining his or her credibility suffices to avert summary judgment."). Summary judgment is not precluded.

In any event, Plaintiff argues a trier of fact must assess the sufficiency of Williams' warning. A warning is adequate only if it informs the invitee of "both the hazardous condition and the risk posed by that condition." Nelsen v. Nelsen, 174 Or.App. 252, 259 (2001). The Oregon Court of Appeals found a warning did not meet this standard in Nelsen, 174 Or.App. at 261. There, the defendant spread smooth plastic on the ground just outside of her house to protect it from paint spills. Id. at 255. There was a short step from the house to the ground outside. The defendant invited the plaintiff to view her paint job, and said "watch your step" as the plaintiff walked outside. The plaintiff slipped on the plastic and fell. The Oregon Court of Appeals held a reasonable juror could find that "watch your step" was an inadequate warning because it did not identify the hazardously slick plastic on the ground below the step. Id. at 259.

The present case is distinguishable from Nelsen. First, in Nelsen, 174 Or.App. at 259 n.5, there was "no evidence that [the] defendant took any action to make the condition safe." Dissimilarly, the Chateaulin Defendants took multiple precautions beyond warning Mrs. Wolff.

As detailed above, they blocked, marked, and trained employees about the step. Second, unlike Nelsen, where the defendant warned of one condition and the plaintiff slipped on another, Williams warned of the same "big step" that Mrs. Wolff fell over. Plaintiff does not allege the presence of any additional tripping hazards that Williams failed to mention. Third, whereas the defendant in Nelsen said "watch your step" as the plaintiff was moving through the doorway, Williams notified Mrs. Wolff of the step before she was near it. Id. at 255. Given this delay, Plaintiff argues there is a genuine issue of fact regarding whether Williams adequately informed Mrs. Wolff of the step's precise location. The Court notes that the timing and location of the warning in Nelsen was not necessarily preferable. Indeed, the Nelsen plaintiff testified that it came too late for her to take preventative action. Id. Williams gave Mrs. Wolff sufficient time to appreciate the risk posed by the step and alter her course, if necessary. Considered in context, Williams' warning was not imprecise. Mrs. Wolff asked to use the doorway against Williams' recommendation. He told her that she could but that there was a "big step." Visual cues — including the change in flooring, transition strip, and velvet rope — highlighted the step's presence in the discussed doorway. On these facts, no reasonable juror could find that Williams' warning was inadequate to inform Mrs. Wolff of the step or the tripping hazard that it posed.

Finally, Plaintiff asserts the Chateaulin Defendants were obligated to do more than warn. Where evidence supports the finding that a condition "could not be encountered with reasonable safety even if the danger was known and appreciated by the invitee," a warning is not enough. Vandeveere-Pratt v. Portland Habilitation Ctr., Inc., 242 Or.App. 554, 557 (2001) (quoting Oregon Civil Jury Instruction 46.09). For example, the Oregon Court of Appeals found a wet floor that was "almost as slippery as ice" qualified as a condition that invitees could not navigate safely despite a warning. Id. at 561. In such circumstances, the possessor of the premises "must

take reasonable and feasible steps to eliminate the danger." Id. at 557. The summary judgment record does not support the application of this heightened standard of care. There is no evidence from which a jury could find that the step was unreasonably hazardous. Put differently, there is no evidence that any "hazard arising from [the step] would not be known and understood by reasonable persons expected to encounter [it]." Maas v. Willer, 203 Or.App. 124, 127 (2005). For all these reasons, summary judgment is appropriate.

## II.    Landlord Defendants' Motion for Summary Judgment (#25)

The Landlord Defendants assert that they are entitled to summary judgment because they had no control over their tenant's creation of the step, and reasonably relied on their tenant to protect its patrons. Under Oregon law, a commercial landlord may be held liable for reasonably foreseeable injuries sustained by its tenant's invitees arising from "known or reasonably knowable conditions antedating the lease."[2] Walsh v. Spalding & Son, Inc., 216 Or.App. 55, 64 (2007). This is true unless, under the totality of the circumstances, the lessor reasonably expected its tenant would remedy the defect or otherwise safeguard its invitees. Id.

Whether a landlord has control over a condition sufficient to trigger liability is determined by assessing the landlord's "ability to decide whether to rent or lease a property to a tenant in the first place, whether to renew a lease or a periodic tenancy, or whether to terminate a tenancy at will or other tenancy that the landlord is able to terminate unilaterally." Park v. Hoffard, 315 Or. 624, 631-32 (1993). Here, the Chateaulin Defendants began the process of designing and installing the at-issue doorway months before the lease was assigned to them.

---

[2] At oral argument, the Landlord Defendants asked the Court to apply the liability standard set forth in Park v. Hoffard, 315 Or. 624, 632 (1993). There, the Oregon Supreme Court held, in pertinent part, that a landlord may be liable for a tenant's dangerous activity if the landlord had reason to know the activity would "unavoidably involve an unreasonable risk of harm to persons off the rental property." Id. The standard is not applicable to the present action which involves an invitee injured by a condition on the premises.

Sweitzer Decl. Ex. 12; Ex. 13, at 2. The Landlord Defendants had the opportunity to terminate negotiations with the Chateaulin Defendants because of their remodel. The Landlord Defendants' failure to do so can properly be viewed as implied consent to the step's creation. Therefore, the Landlord Defendants may be held liable for reasonably foreseeable injuries sustained from the step unless, under the totality of the circumstances, they reasonably relied on the Chateaulin Defendants to protect their invitees from such injuries. Spalding & Son, Inc., 216 Or.App. at 64. Typically, the trier of fact must sort through this question of reasonableness. Id. However, here, the same undisputed evidence that shows the Chateaulin Defendants satisfied the standard of care also supports the Landlord Defendants' summary judgment motion. The Chateaulin Defendants mitigated the step's risks, controlled patrons' use of the step, and warned patrons about the step. Under these circumstances, no reasonable trier of fact could conclude that the Landlord Defendants were wrong to rely on their tenant to safeguard its patrons. Jensen v. Meyers, 250 Or. 360, 365 (1968) (finding a "lessor should not be liable" where its tenant had the opportunity to render the condition harmless, warn guests of the danger, and exercise control over the premises).

## ORDER

For the reasons stated above, the Landlord Defendants' motion (#25) and the Chateaulin Defendants' motion (#27) are GRANTED. This ruling moots the Chateaulin Defendants' motion (#36) for leave to amend their answer.

It is so ORDERED and DATED this _20_ day of January 2016.

MARK D. CLARKE
United States Magistrate Judge